RECEIVED AND FILED
2007 AUG 21  AM 9:44
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HECTOR PABLO OLIVA, SALUD NATURAL ENTREPRENEURS, INC., **Plaintiff(s)** v. MICHAEL POMA RAMIREZ, DISCOVERY HEALTH ESTILOS, CORP., et al., **Defendant(s)** | CIVIL NO. 07-1569 (JAG) |

**MEMORANDUM ADOPTING REPORT AND RECOMMENDATION,
GRANTING PRELIMINARY INJUNCTIVE RELIEF**

On June 26, 2007, plaintiffs Hector Pablo Oliva ("Mr. Oliva") and Salud Natural Entrepreneurs, Inc. ("Salud Natural") (collectively, "plaintiffs") filed a Complaint against defendants Michael Poma-Ramirez ("Mr. Poma") and Discovery Health Estilos Corp. ("Discovery Health") (collectively, "defendants") alleging trademark infringement under the Lanham Act § 43(A)(1)(A), false and misleading representations under the Lanham Act § 43(A)(1)(B), trademark dilution under the Lanham Act § 43(c), violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. §1125(D)(1)(A), violation of the Puerto Rico Trademark Act, violation of concepts of unfair competition, trade libel, and tortious interference with contractual relations. (Docket No. 1). On that same day, plaintiffs filed an emergency motion for preliminary injunction, seeking to enjoin defendants from unlawfully distributing and selling counterfeit dietary supplements in packages

Civil No. 07-1569 (JAG) 2

bearing trademarks that are unauthorized copies and imitations of plaintiffs' trademarks and which are practically identical to those of plaintiffs. (Docket No. 3).

On June 28, 2007, this Court referred the motion for preliminary injunction to Chief Magistrate-Judge Justo Arenas for a hearing and Report and Recommendation. (Docket No. 4). On July 13, 2007, defendants filed a memorandum in opposition to the motion for preliminary injunction. (Docket No. 22). The Magistrate-Judge held a show cause hearing and, on July 18, 2007, issued a Report and Recommendation to grant plaintiffs' motion for injunctive relief. (Docket No. 32). On August 2, 2007, defendants filed objections to the Report and Recommendation. (Docket No. 36).

## DISCUSSION

### I. Standard for Reviewing a Magistrate-Judge's Report and Recommendation

A District Court may, on its own motion, refer a pending motion to a U.S. Magistrate-Judge for a Report and Recommendation. See 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Rule 72(a). Pursuant to Fed.R.Civ.P. 72(b) and Local Rule 72(d), the adversely affected party may contest the Magistrate-Judge's Report and Recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. See 28 U.S.C. § 636(b)(1). The Court may accept, reject or modify, in whole or in part, the Magistrate-Judge's recommendations.

Since defendants have filed timely objections to the Magistrate-Judge's Report and Recommendation, the Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which specific objection is made. See United States v. Raddatz, 447 U.S. 667, 673 (1980); Lopez v. Chater, 8 F.Supp.2d 152, 154 (D.P.R. 1998).

## II. Preliminary Injunctive Relief

The First Circuit has stated that in order for this Court to issue preliminary injunctive relief, four requirement must be met: (1) plaintiffs must demonstrate a likelihood of success on the merits; (2) that a risk of irreparable injury exists if relief is not granted; (3) that plaintiffs' injury, if relief is not granted, outweighs any injury to the defendant; and (4) that the public interest will not be adversely affected by granting the injunction. See S.E.C. v. Fife, 311 F.3d 1, 8 (1st Cir. 2002); Langlois v. Abington Hous. Auth., 207 F.3d 43, 47 (1st Cir. 2000).

## III. Defendants' Objections to the Report and Recommendation

Defendants argue that plaintiffs are not entitled to injunctive relief because plaintiffs are barred by laches in any of its two modalities: estoppel by laches or estoppel by acquiescence. Defendants further argue that plaintiffs have come to this Court with unclean hands and are therefore not entitled to relief. In the alternative, defendants argue that if the Court decides to issue the preliminary injunction in favor of plaintiffs, then it should not

order the cancellation of Puerto Rico Trademark Registration No. 72,071, a mark currently registered to co-defendant Poma, because an administrative proceeding is currently active and such an order would be premature.

### A. Defendants' Estoppel Defense

#### 1. Estoppel by laches

Estoppel by laches refers to a plaintiff's unreasonable delay in filing suit which causes prejudice to defendant, and when weighed with other equitable factors, results in a bar to relief. See McCarthy on Trademarks and Unfair Competition, Fourth Edition, § 31:2. Accordingly, the burden is on defendant to prove that plaintiff delayed bringing this action; that such delay was inexcusable; and that defendant was prejudiced by reason of the delay. Jenn-Air Corp. v. Penn Ventilator Co., 464 F.2d 48 (3rd Cir. 1972). Defendant must "show some reason why it will not be just to stop him." Dwinell-Wright Co. v. White House Milk Co., 132 F.2d 822, 56 U.S.P.Q. 120 (2nd Cir. 1943).

"Where a person entitled to exclusive use of a trademark is guilty of unreasonable delay in asserting his rights against an infringer ..., or acquiesces in the latter's use, ... a court of equity has the discretionary power ... to deny injunctive relief or an accounting." ProFitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C., 314 F.3d 62, 65 (2nd Cir. 2002) citing Carl Zeiss Stiftung v. VEB Carl Zeiss Jena, 433

F.2d 686, 703 (2nd Cir. 1970). In determining whether plaintiff is estopped by laches, the Court must be guided by the principle that "[b]ecause laches is an equitable doctrine, its application is inextricably bound up with the nature and quality of the plaintiff's claim on the merits relevant to a prospective injunction." University of Pittsburgh v. Champion Products, Inc., 686 F.2d 1040, 1044 (3rd Cir. 1982). "[I]t is harder to establish this [laches] defense when the newcomer originally sets out to pass off his goods; conceivably indeed, in the face of deliberate and continued palming off, not even the owner's assurance will be a defense." Dwinell-Wright Co., 132 F.2d at 825. Moreover, laches in seeking a preliminary injunction cannot be invoked by an intentional and deliberate infringer. National Customer Engineering v. Lockheed Martin Corp., 43 U.S.P.Q.2d 1036 (C.D. Cal. 1997).

Specifically, when likelihood of confusion is proven, acquiescence by plaintiff does not bar suit since courts should not allow parties to continue use of conflicting trademarks that are confusing to customers: "Although petitioner has acquiesced in use of their logo by the registrant, the public interest in preventing confusion around the marketplace is paramount to any inequity caused the registrant." Coach House Restaurant, Inc. v. Coach & Six Restaurants, Inc., 934 F.2d 1551 (11th Cir. 1991); TMT North America, Inc. v. Magic Touch GmbH, 124 F.3d 876 (7th Cir. 1997).

When determining whether laches bars a preliminary injunction, a delay "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." Le Sportsac, Inc. v. Dockside Research, Inc., 478 F. Supp. 602 (S.D.N.Y. 1979). However, as stated above, delay may not be sufficient to negate the moving party's otherwise strong showing since it is just one element in the weighing of equities. Ideal Industries, Inc. v. Gardner Bender, Inc., 612 F.2d 1018 (7th Cir. 1979).

In terms of determining whether a given period of time justifies a finding of laches, the Court must bear in mind that laches should not necessarily be measured from defendants' very first use of the contested mark, but from the date that defendants' acts first significantly impacted on plaintiffs' good will and business reputation. John Wright, Inc. v. Casper Corp., 419 F. Supp. 292 (E.D. Pa. 1976). "[O]ne cannot be guilty of laches until his right ripens into one entitled to protection. For only then can his torpor be deemed inexcusable." Johanna Farms, Inc. v. Citrus Bowl, Inc., 468 F. Supp. 866 (E.D.N.Y. 1978). "[A] plaintiff should not be obligated to sue until its right to protection has ripened such that plaintiff knew or should have known, not simply that the defendant was using the potentially offending mark, but that plaintiff had a provable infringement claim against defendant." ProFitness Physical

Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C., 314 F.3d 62, 65 (2nd Cir. 2002).

Following the case law cited above, defendants' laches argument is easily disposed of since there is no evidence of inexcusable delay. Defendants argue that plaintiffs waited 10 months to file suit in federal court since becoming aware, in August 2006, of the existence of counterfeit NOPALINA in the market, and of the fact that Mr. Poma had an application with the Puerto Rico Trademark Office for NOPALINA. However, the evidence presented before the Magistrate-Judge shows that plaintiffs first found out about the counterfeit NOPALINA being on the market when Mr. Juan Rincon, president of JR Natural & Nutritional Products Distributor (JR Distributor), saw that it was being sold at GNC stores. Furthermore, it was not until January 2007 that plaintiffs discovered that Mr. Poma was the individual selling the counterfeit NOPALINA to GNC. In that same month, plaintiffs sought an injunction against GNC to stop the sale of the counterfeit NOPALINA.[1] The preliminary injunction was issued and GNC stopped selling counterfeit NOPALINA.

It was not until May 2007 that Mr. Rincon found out about counterfeit NOPALINA being sold in Puerto Rico by other retailers and notified Mr. Oliva. Mr. Oliva then went to the press and

---

[1] Summons were attempted to be served on Mr. Poma, but the case proceeded against GNC only when it became impossible to serve Mr. Poma.

published an article stating that the NOPALINA "Made in China" was a forgery. Only days later, an ad appeared in a local paper claiming that the true, legal NOPALINA was the one "Made in China." Shortly thereafter, on June 8, 2007, plaintiffs filed a motion in opposition to Mr. Poma's registration at the Puerto Rico State Department.

On this record, it cannot be said that plaintiffs knew, as early as August 2006, that defendants' acts would cause damage to their good will. It was not until May 2007 that plaintiffs learned that the injunction issued by the local court against GNC would not be sufficient and that the problem was much more complicated. Having filed suit on June 26, 2007, plaintiffs cannot be said to have incurred in any delay, much less the requisite inexcusable delay. Hence, the defendants' laches argument must fail, and the Court need not discuss the element of prejudice.

It is worth mentioning that defendants' laches argument fails not only because there is no evidence of inexcusable delay, but also because the strong showing made by plaintiffs for a preliminary injunction trumps the alleged 10 month delay in filing.[2] In evaluating plaintiffs' likelihood of success on the merits, it was determined that plaintiff had proven that there is a likelihood of confusion between their product and the counterfeit NOPALINA.

---

[2] The Magistrate-Judge found that plaintiff met all four requirements for a preliminary injunction. Defendants do not object to those findings.

Moreover, the Magistrate-Judge found that plaintiffs proved intentional copying of their product by defendants. Laches, therefore, cannot be invoked by defendants to block a preliminary injunction since it has been proven that they are intentional and deliberate infringers.

### 2. Estoppel by acquiescence

Defendants make a separate argument for estoppel based on acquiescence. "Acquiescence is a doctrine that is very similar to laches. ... The only difference between acquiescence and laches is that laches denotes passive consent and acquiescence denotes active consent." Coach House Restaurant, Inc., 934 F.2d at 1558. The party asserting this defense must prove: "(1) [t]hat petitioner actively represented that it would not assert a right or a claim; (2) that the delay between the active representation and assertion of the right or claim was not excusable; and (3) that the delay caused the registrant undue prejudice." Id.

Defendants' only argument to support their acquiescence allegation is that plaintiffs waited too long to file this suit. This assertion, however, lacks merit. There is absolutely no evidence in this case of an active representation by plaintiffs that they would not assert a right or a claim. Moreover, as explained in the preceding sub-section, the evidence does not support a finding of plaintiffs incurring in inexcusable delay in setting forth their

Civil No. 07-1569 (JAG)                                          10

claims of infringement. Consequently, the estoppel by acquiescence argument must also fail.

### B. Defendants' Unclean Hands Defense

The unclean hands doctrine "is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the conduct of the defendant." Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806 (1945).

Defendants contend that plaintiffs have come to this Court with unclean hands because of their alleged illegal use of NOPALINA. As summarized above, defendants' argument is based on the fact that plaintiffs submitted inconsistent information in their two applications for registration with the USPTO; that they continued to use the mark NOPALINA even after the USPTO rejected their application; that they falsely stated that they possess a patent and trademark; that Mr. Oliva has conducted business in Puerto Rico without applying to do so; and that they used the ingredient sacred bark in the NOPALINA mixture without complying with certain requirements set forth by the Department of Consumer Affairs of Puerto Rico ("DACO").

Plaintiffs' position must be judged by reference to the conduct existing at the time of the filing of the suit; defendants cannot base their unclean hands argument on inequitable conduct which had

been discontinued for some time prior to suit <u>Q-Tips, Inc. v. Johnson & Johnson</u>, 108 F.Supp. 845 (D.N.J. 1952), aff'd, 206 F.2d 144 (3rd Cir. 1953). However, even if plaintiffs' conduct existed at the time of filing suit, if that conduct has been rectified by the time of judgment, defendants cannot base their unclean hands argument on that conduct. See <u>Fund of Funds, Ltd. v. First American Fund of Funds</u>, 274 F. Supp. 517, 519 (S.D.N.Y. 1967). The Court finds that the defendants' allegations fail this test.

First, since plaintiffs no longer include sacred bark in the NOPALINA mixture, this fact cannot be used as a basis for the unclean hands argument. In addition, Mr. Juan Rincon has admitted that his statements regarding the issuance by the FDA of a certificate in favor of Salud Natural, and that NOPALINA is protected by the USPTO, are not true. Hence, it is no longer a fact that he sustains these untruthful statements.

Regarding the allegation that plaintiffs continued using the mark in spite of the USPTO's rejection of their application, the Court does not believe this to be evidence of bad faith. The Magistrate-Judge found that abundant evidence was presented at the hearing "reflecting the strength of the mark notwithstanding the proceedings at the USPTO, at the Puerto Rico Trademark Office, DACO, and San Juan Superior Court." The fact that the USPTO rejected plaintiffs' application did not bar them from continuing its use absent a court order enjoining them from doing so. Moreover, the

fact that plaintiffs initiated action against defendants - who have NOPALINA LINAZA PLUS registered in the Puerto Rico Department of State - is not an indication of unclean hands, especially since the action was instituted in good faith to protect their mark. See Esquire, Inc. v. Esquire Slipper Mfg. Co., 243 F.2d 540 (1st Cir. 1957).

The defendants also aver that Mr. Oliva has conducted business in Puerto Rico without applying to do so first, and that plaintiffs submitted inconsistent information in their two applications for registration with the USPTO. The Court fails to see how these two facts could possibly constitute unclean hands. See e.g., United States Light & Heating Co. v. United States Light & Heating Co., 181 F. 182 (C.C.D.N.Y. 1910); Powell v. Mobile Cab & Baggage Co., 83 So. 2d 191 (1955). All things considered, they simply do not amount to the kind of conduct that would cause the Court to deny relief to plaintiffs.

### C. Defendants' Argument re: Administrative Procedure and Cancellation of Registration at State Department

Defendants contend that because there is an ongoing administrative procedure in the Puerto Rico State Department, seeking the cancellation of the NOPALINA LINAZA PLUS mark registered in favor of defendants, the Court should deny any equitable remedy. They pray that the Court abstain from issuing a ruling ordering the cancellation of that mark and allow for the administrative procedure

Civil No. 07-1569 (JAG)                                          13

to conclude since an order for the cancellation of Reg. No. 72,071 would be "tantamount to a permanent injunction, depriving defendants of their proprietary rights without due process of law." Although defendants frame this argument in the alternative-- that is, they ask that if the Court decides to grant plaintiffs' requested injunctive relief, then it should not order the cancellation of their registration as part of said injunction--they do argue what is basically failure to exhaust administrative remedies.

Exhaustion of administrative remedies is a doctrine inapplicable in this case because the action before this Court and the proceeding before the State Department are two independent and non-related actions. Schwinn Bicyle Co. v. Abikaran, 453 F.Supp. 57 (D.P.R. 1978). While the proceeding before the State Department is an administrative proceeding through which plaintiffs may seek cancellation of a registration pursuant to the Puerto Rico Trademark Act, any action to recover damages is judicial. Id.; 10 L.P.R.A. §§ 171q, 171v. When faced with an identical allegation, in which plaintiffs had filed suit in federal court and also petitioned the Puerto Rico State Department for the cancellation of the trademark registration of defendant, the Court in Schwinn Bicycle Co. held:

> This case does not involve judicial review of any administrative proceedings. Thus, it cannot be seen as a premature resort to the judicial forum. It does not involve a matter to which a court must first look to an agency's expertise, but a matter of law to which Congress has granted federal district courts original jurisdiction. Thus, it is clear that federal infringement and unfair practice claims are not precluded simply because the

> holder of the federal trademark seeks to cancel an illegally locally registered trademark. Cancellation of Defendant's locally registered trademark is not a prescribed administrative remedy to Plaintiff's full injury or cause for redress.
> Id. (internal citations omitted).

However, the Court in <u>Schwinn Bicycle Co.</u> determined that since one of plaintiffs' prayers of relief was directed toward the same end as the administrative proceeding, that is, the cancellation of defendants' local registration, the better course of action would be for the federal court to stay its hand as to that specific prayer of relief. The Court believes that, at this juncture, the same course of action is appropriate here.

The registration of the mark is but *prima facie* evidence of ownership. 10 L.P.R.A. §171w. Ordering the cancellation of a registration is not equivalent to cancelling the mark nor does it invalidate state or federal rights since the registration does not create the right to the mark. See <u>Keebler Co. v. Rovira Biscuit Corp.</u>, 624 F.2d 366 (1st Cir. 1980). Therefore, the remedies afforded to plaintiffs here are sufficient to preserve their purported rights pending a final adjudication, without the Court having to interfere with the local administrative action. The Court thus modifies this aspect of the Magistrate-Judge's Report and Recommendation, and will let the ongoing administrative proceeding before the Puerto Rico State Department run its course. To be sure,

Civil No. 07-1569 (JAG)                                              15

plaintiffs can always resort to this forum to enforce the relief provided herein.

IV. <u>Unobjected Findings and Recommendations</u>

Defendants did not object to the findings of the Magistrate-Judge regarding plaintiffs' fulfillment of each of the four requirements to be granted a preliminary injunction. The Court has nonetheless reviewed the same and agrees with them. Similarly, after reviewing the record, the Court agrees with the arguments and legal conclusions in the Report and Recommendation.

## CONCLUSION

For the foregoing reasons, this Court **ADOPTS** the Magistrate-Judge's Report and Recommendation in its entirety, except that part that would order the cancellation of the trademark registration. The motion for a preliminary injunction filed by plaintiffs is therefore **GRANTED**, and the defendants' counter motion is **DENIED**.

Accordingly, the defendants, their agents, servants, employees, attorneys, successors, licensees, and assigns, and anyone acting in concert or privity with defendants, jointly and severally, are hereby enjoined:

1. from utilizing the trademarks NOPALINA and/or NOPALINA LINAZA PLUS, or any derivative or shorthand notation thereof, or any term similar thereto, in connection with the sale of health or dietary

Civil No. 07-1569 (JAG)                                              16

supplements, which would give rise to a likelihood of confusion as to the source of such dietary supplements as those being sold by plaintiff;

2. from infringing Salud Natural's rights in the NOPALINA marks;

3. from soliciting any business under said NOPALINA marks;

4. from passing themselves off as being associated with Salud Natural;

5. from causing dilution of the distinctiveness of the NOPALINA marks;

6. from registering in their own name any of the NOPALINA marks;

7. from using any other trademark, service mark, trade name, corporate name, word or symbol; or doing any other acts likely to induce the belief that defendants' commercial activities, products, services or business are Salud Natural's commercial activities, products, services or business; or that defendants are in any way authorized or sponsored by or connected, endorsed or associated with Salud Natural or with Salud Natural's commercial activities, products, services or business;

8. from unfairly competing with or against Salud Natural;

9. from further making public statements consisting of injurious falsehoods meant to denigrate Salud Natural's long-standing right to the NOPALINA marks;

10. from illegally and tortiously interfering with Salud Natural's relationship with its independent resellers and/or retailers;

Civil No. 07-1569 (JAG)                                                  17

Defendants are hereby ordered to file with the Court, and serve plaintiffs, within thirty (30) days after the service on defendants of this order, a report in writing under oath setting forth in detail the manner and form in which defendants have complied with this injunction.

Defendants are further enjoined from using in connection with the sale of dietary supplements any labels and/or trade dress which would associate the products sold by defendants as those emanating from Salud Natural and, more particularly, any labels which employ trademarks in red and green on a white background or any artwork or layout confusingly similar to the NOPALINA package, labels, and marks.

The court orders defendants to deliver to the court for impoundment and destruction any and all advertising, brochures, circulars, price lists, signs, banners, business stationery, prints, packages, labels, containers, freights, cartons, receptacles, wrappers, art work, and other materials in its possession or custody or under its control that contain the NOPALINA name or otherwise infringe Salud Natural's NOPALINA marks and any other of Salud Natural's trademarks, service marks or trade names;

The Court orders defendants to immediately transfer all rights and ownership unto the internet domain name "nopalinapr.com" and refrain from registering any other internet domain name that infringes upon Salud Natural's NOPALINA marks;

Civil No. 07-1569 (JAG)                                                    18

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 15th day of August, 2007.

                                        JAY A. GARCIA-GREGORY
                                        United States District Judge